DRUET (CLARKE v.). See Case No. 2,850.

---

## Case No. 4,093.

### In re DRUMMOND.

[1 N. B. R. (1873) 231 (Quarto, 10); [2] 1 Am. Law T. Rep. Bankr. 7.]

District Court, D. Indiana.

BANKRUPTCY—FRAUDULENT PREFERENCES—PLEADING AND PROOF.

1. Every failing debtor who gives a preference to a part of his creditors, thereby com-

[1] [Reported by Samuel H. Hempstead, Esq.]

[2] [Reprinted from 1 N. B. R. 231 (Quarto, 10), by permission.]

mits an act of bankruptcy, and a judgment that he is a bankrupt must follow.
[Cited in Re Silverman, Case No. 12,855; Re Ryan, Id. 12,183; Curran v. Munger, Id. 3,487; Re Jacobs, Id. 7,159.]

2. When two distinct matters, each of which contains a good cause of action or defence, are alleged conjunctively, it is enough if either of them be satisfactorily proved.
[Cited in Re Sutherland, Case No. 13,638; Re Dunkle, Id. 4,160; Re McKibben, Id. 8,859; Re Marter, Id. 9,143.]

On the 19th of July last, several mercantile firms in Cincinnati filed in this court a petition against John T. Drummond, charging that, on the 20th of March last, he committed several acts of bankruptcy, and praying that he be declared a bankrupt. They claim that they are creditors to the aggregate amount of $2,784.36. The acts of bankruptcy specified are as follows: 1. That on the 20th of March, 1867, at St. Paul, in Indiana, Drummond, being possessed of certain estate, property, rights, and credits, including a stock of merchandise, transferred and sold the same and all his other property to one James Trimble and John Read, with intent to hinder, delay, and defraud his creditors. 2. That said Drummond, on the day aforesaid, in contemplation of insolvency, sold the said property to said Trimble & Read, to whom he was indebted, and did afterward pay and assign certain notes, and accounts, to other of his creditors, with intent to defeat, and delay, the operation of the bankrupt act, and to give a preference to said creditors. Drummond has filed a plea denying all the charges, and the parties have by agreement submitted the issue thus made for trial to the court without a jury.

The evidence is substantially as follows: That on the 20th of March last, the petitioners were and still are, creditors of Drummond, as alleged in the petition. That for more than a year past, Drummond has been, and now is, a resident of St. Paul, in Shelby county, Indiana. That in May, 1866, said Trimble & Read, then, and still residents of St. Paul, were the owners of a store of country merchandise in that town, and then and there sold the same to Drummond for several thousand dollars, and in part payment received from him a conveyance of 200 acres of land at the price of $1,000, the residue of the price of the goods, to wit: $1,500 remaining unpaid till the 20th of March last, on which day, Drummond finding, as he swears, that he could not carry on his business and pay his debts, proposed to Trimble & Read to sell his store to them in payment of his debt to them, and in order to pay his other debts which he had in the mean time contracted with merchants at Cincinnati to keep up his stock of goods. That Trimble & Read assented to this proposition; and it was agreed between them that the goods should be invoiced, and taken by Trimble & Read at wholesale Cincinnati prices; that they should take back said land at $1,000, and that

they should pay for the whole by relinquishing their said debt of $1,500, and by paying for the residue in cash on credit. That in pursuance of this arrangement, the parties proceeded to inventory the goods, which employed them two or three days; and, in the mean time. several of Drummond's other creditors, hearing of these proceedings, came to St. Paul, and found the parties invoicing the goods, and declared to them that, unless their respective claims were secured, they would proceed to law to attach the goods; whereupon an arrangement with these creditors was made, by which Trimble & Read, after satisfying their own debt, should pay the balance of the price of the goods and land to these importunate creditors—and to the creditors Drummond also assigned book accounts to the amount of $1,500 to secure them. That, upon this arrangement, the invoicing proceeded, and when it amounted to $4,000 it was agreed that the residue—a parcel of unsaleable goods—should be taken by Trimble & Read in a lump at $575.

The evidence proves that this arrangement swallowed up all the property of Drummond; and that the petitioners and other absent creditors, whose debts amount in the aggregate to more than $3,000, were left without any means of paying them. It is proved that the goods, accounts, and land thus disposed of included all the property owned by Drummond; and were worth about $6,000, and that Drummond's debts then amounted to about $8,000. Drummond swears that at the time of these transactions, he had made no estimate of the amount, either of his debts or his assets; that, in thus transferring his property, he had no intent to defraud, hinder, or delay any of his creditors; that, up to the time when said invoice had been made to the amount of $4,000, he supposed that he had enough property to pay all his debts; that in this, however. he discovered he was mistaken as soon as the invoicing had reached $4,000; and notwithstanding said discovery he afterwards proceeded to consummate said arrangement with Trimble & Read, and other creditors. The evidence also shows that all the debts of Drummond were due at the time of these transactions. Does this evidence establish any of the acts of bankruptcy charged in the petition?

McDONALD, District Judge. Those provisions of the bankrupt act, which relate to the points under consideration, are found in the 39th section [14 Stat. 536]. and declare that every person who shall "make any assignment, gift, sale, conveyance, or transfer of his estate, property, rights, or credits, with intent to delay, defraud, or hinder his creditors," shall be deemed to have committed an act of bankruptcy; and that every person, "being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, who shall make any payment, gift, grant, sale, conveyance, or transfer of money or other property, estate, rights, or credits, * * * with intent to give a preference to one or more of his creditors, * * * or with intent, by such disposition of his property, to defeat or delay the operation of the bankrupt act, * * * shall be deemed to have committed an act of bankruptcy." The counsel for Drummond have contended that, to make him a bankrupt under any of these provisions, the wrongful intent must exist on the part of the persons receiving his property, as well as on the part of Drummond. This is undoubtedly the rule in cases arising under the statutes against fraudulent conveyances. And it may be the rule under the 35th and 39th sections of the bankrupt act in a suit by an assignee against a preferred creditor. But it is clearly not the rule in the case on trial. Here we look only to the interest of the party charged with an act of bankruptcy. If he intends, by his act, to delay, hinder, or defraud his creditors, or to give a preference to any of them, or to defeat or delay the operation of the bankrupt act, he clearly commits an act of bankruptcy, however innocent the intent of the preferred creditor, or the person to whom the transfer is made.

The petition first charges that Drummond transferred his property with intent to delay, hinder, and defraud his creditors. Is this charge proved? Is it proved that such an intent existed in his mind when he made the transfer to Trimble & Read? I construe the intent under consideration to mean an actual design in the mind. Drummond positively swears that he had no such intent. And there is nothing in the evidence that leads me to conclude that he swears falsely. I hold, therefore, that the first charge of bankruptcy is not proved as alleged in the petition.

The second charge of bankruptcy set out in the petition is that Drummond, in contemplation of insolvency, transferred, by way of payment to certain creditors, his property with an intent to defeat and to delay the operation of the bankrupt act, and to give a preference to said creditors. This averment really contains a charge of two acts of bankruptcy—the intent to defeat and delay the operation of the bankrupt act, and the intent to prefer some of his creditors. The counsel for Drummond have argued that, in order to success, the petitioners must prove both these. In this I think they are mistaken. It is never good pleading to make averment in the alternative, nor is it sufficient evidence to prove that either one or the other of the two propositions is true, but leaving it uncertain which of them is true. But when two distinct matters, each of which contains a good cause of action or defence, are alleged conjunctively, it is enough that either of them be satisfactorily proved. As to the charge that Drummond disposed of his property with intent to defeat and delay the operation of the bankrupt

act, the same reason seems to apply as we have applied to the first act of bankruptcy charged in the petition. I do not think that, in the transactions above detailed, it is sufficiently proved that Drummond intended to defeat and delay the operation of the bankrupt act. Rather, I think from evidence, that he had no thought at all concerning that law, as it had only been passed eighteen days before—had not then been published, and even lawyers were ignorant of its provisions. As to the charge that Drummond transferred all his property to some of his creditors with intent to give them a preference over his other creditors, I do not see how he can escape it. It appears, indeed, that no intent to prefer any creditor existed in his mind at any time before the inventory already mentioned amounted to $4,000. For up to that time he supposed he had enough assets to pay all his debts, and he seems to have intended to pay them all out of those assets. But he himself swears that, when the invoicing reached that amount, he perceived that his property was not sufficient to satisfy his creditors. At that moment he was an insolvent man; and he then clearly saw it and knew it. At that time his arrangement with Trimble & Read was incomplete. No delivery of any property had been as yet made to them. They had paid him nothing on the contract; they had executed no writing in relation to it, and it clearly had not proceeded to such a consummation as to make it binding on anybody. The locus poenitentiae then existed, and he had at that moment a perfect right in law to drop the whole matter, and refuse to carry out his arrangement with Trimble & Read. Had he done so, it is plain that they could have maintained no action, on it, against him. But, with this knowledge of his insolvency, he proceeded to transfer all his property for the benefit of a portion of his creditors, then well knowing that he was thereby giving them a preference, and that he had not a dollar left to apply to the debts due by him to the petitioners.

Now, it is a rule that every sane man is presumed to intend the probable consequences of his voluntary act. The consequences of this transfer by Drummond of all his property to a portion of his creditors, were not only that it would probably give them a preference, but that it would necessarily and certainly produce that effect. He must have known that this consequence would follow that act; and he must, therefore, be conclusively presumed to have intended it. In so doing he committed an act of bankruptcy, and a judgment that he is a bankrupt must follow.

It is due to the parties concerned to say that I see no moral turpitude in this matter on the part of any of them. Under the law, as it stood before the bankrupt act took effect, a debtor had a right to prefer a portion of his creditors, and the most diligent creditor generally obtained the preference. The equity maxim was "vigilantibus, et non dormientibus, jura subveniunt." But the bankrupt act abolished this rule; and now every failing debtor, who gives a preference to a part of his creditors, thereby commits an act of bankruptcy; and the bankrupt law will not allow the preference. But our bankrupt act took effect March 2, 1867. The transactions under consideration occurred only eighteen days afterwards, and, though every man is bound at his peril to know the law, yet as this act was not published till several months afterwards, it is probable that these parties were not in fact aware that they were violating its provisions. It is proper, also, to say that I give no opinion touching the liability of any of the preferred creditors in case of a suit against them by the assignee in bankruptcy who may be appointed in this case. Whether they are bound to bring into the general fund of the bankrupt's estate, the amount which they have received from Drummond, must depend, to some extent at least, on other considerations and other evidence not relevant to the present adjudication. And indeed as the preferred creditors are not parties to this proceeding, it would be unjust that the present decision should in any manner affect their interest except so far as it fixes the status of Drummond as a bankrupt.